FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 APR 18  PM 3 51

STEPHAN HARRIS, CLERK
CHEYENNE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

MARIAN K. PORTER

Plaintiff,

v.

U.S. DEPARTMENT OF THE INTERIOR, an agency
of the U.S. Government, and
SALLY JEWELL, in her official capacity as secretary
of the U.S. Department of the Interior, and
U.S. BUREAU OF LAND MANAGEMENT, an agency
of the U.S. Department of Interior, and
DON SIMPSON, in his official capacity as Wyoming
State Director of the U.S. Bureau of Land Management

Defendants.

1 4CV083-7

---

**COMPLAINT FOR JUDICIAL REVIEW,
DECLARATORY AND INJUNCTIIVE RELIEF**

---

**COMES NOW** the Plaintiff, MARIAN K. PORTER, by and through her attorney of

record, CHARLES R. KOZAK, ESQ., and for her causes of action against Defendants, U.S.

DEPARTMENT OF THE INTERIOR, an agency of the U.S. Government, and

SALLY JEWELL, in her official capacity as secretary of the U.S. Department of the Interior,

and U.S. BUREAU OF LAND MANAGEMENT, an agency of the U.S. Department of Interior,

and DON SIMPSON, in his official capacity as Wyoming State Director of the U.S. Bureau of Land Management.

## I. INTRODUCTION

1.      The Plaintiff, MARIAN K. PORTER, hereby seeks review of an unjust decision, based on a claim that payment of license fees was affecting the mining claims owned by her and held in her family since 1986 and developed by her and her family with great personal effort and expense.

2.      The decision was announced in a certified letter received by MARIAN K. PORTER.

## II. PARTIES

3.      The Plaintiff MARIAN K. PORTER  (hereinafter called "PORTER") is a citizen of the United States and resident of Battle Mountain, Nevada, who owns and has owned for many years the TEN SLEEP claims.

4.      The Defendant U.S. DEPARTMENT OF THE INTERIOR is an administrative agency of the U.S. Government with responsibility and authority for managing mining claims through the U.S. Bureau of Land Management, including the PORTER mining claims at issue in this case.

5.      The Defendant SALLY JEWELL is the secretary of the Department of the Interior who has ultimate authority and responsibility for managing mining claims administered by the Department of Interior and the U.S. Bureau of Land Management, including the PORTER mining claims at issue in this case.

6.      The Defendant U.S. BUREAU OF LAND MANAGEMENT, (hereinafter called "BLM"), is an administrative agency of the U.S. Department of the Interior of the U.S. Government with responsibility and authority for managing mining claims, including the PORTER mining claims at issue in this case.

2

7.     The Defendant DON SIMPSON is the Wyoming State Director of the U.S. Bureau of

Land Management and has ultimate authority and responsibility within Wyoming for managing

mining claims, including the PORTER mining claims at issue in this case.

### III. JURISDICTION AND VENUE

8.     Jurisdiction in this case is found on 28 U.S.C. §1346(a) (U.S. as Defendant), 5 U.S.C. §§

701-706 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361

(action seeking mandamus against U.S. officer or agency), and 28 U.S.C. §§ 2201-02

(declaratory judgment).

9.     Venue in the District of Wyoming is appropriate pursuant to 28 U.S.C. §1391(b) (non-

diversity case) and 28 U.S.C. §1391(e) (U.S. officer or agency as defendant) because: (1) some

of the Defendants, on information and belief, reside in the District of Wyoming; (2) because a

substantial part of the acts and omissions giving rise to the claims raised in this suit occurred in

the District of Wyoming; and (3) because the PORTER mining claims at issue in this case is

located in the District of Wyoming.

10.     PORTER has both statutory and constitutional standing to pursue this case because she is

directly and adversely affected by the decision of the Defendants to declare her mining claims

void and forfeited. This decision, if upheld, threatens the total loss, without any compensation,

of her mining claim along with the personal efforts of herself and her family members to

improve and develop the claims extending back to 1986.

11.     This case is ripe for review because the decision of Defendants declaring her claim null

and void on December 31, 2013, was affirmed by the U.S. Department of Interior Board of Land

Appeals on March 20, 2014.  The decision of the Board is a final decision of the Defendant

Department of Interior. 43 C.F.R. §4.21(c).

12.     The continued actions of the Defendants delaying the PORTER mining plans caused

irreparable injury to PORTER because, due to her age, PORTER has only a limited number of

years to be personally involved in handling her claims.

## IV.  GENERAL ALLEGATIONS

13.     The sole basis for forfeiting the Ten Sleep mining claims (as enumerated in the above

caption of this case) of Plaintiff MARIAN K. PORTER is that the maintenance fees on said

claims from PORTER for 2013 were not paid as required by *30 U.S.C. Secs. 28f and 28g* as

implemented by *43 CFR Parts 3834, 3835 and 3836* on or before September 1, 2013.

14.     Actually, in her Decision, CHIEF NEUMAN states that the forfeiture was appropriate

because PORTER did not pay her maintenance fees "within the time allowed (including 2

extensions)". *Decision* at page 2.

15.     Subsequently, CHIEF NEUMAN in the Conclusion section of her Decision states that

the mining claims are being forfeited because the maintenance fees were not paid by September

3, 2013. *Decision* at page 2.

16.     *43 CFR Sec. 3834.11* clearly and unequivocally states in subsection (a) (2): "Annual

maintenance fee.  You must pay an annual maintenance fee on or before September 1st of each

year in order to maintain a mining claim or site for the upcoming assessment year".

17.     While the fact that in September 2013, September 1 fell on a Sunday and Monday,

September 2 was the Labor Day national holiday might explain why CHIEF NEUMAN stated

September 3, 2013 as the date when the maintenance fees were due, it does not explain why she

said in her factual summary that the claims were not paid "within the time allowed **(including 2 extensions)**". Emphasis added.

18.    A review of the attached Complaint filed on December 3, 2013 by PORTER against SHYAM K. CHETAL (hereinafter "CHETAL") *et al* in the Federal Court for the District of Nevada, provides the answer as set forth below.  A copy of this Complaint is attached hereto as **Exhibit 1** and by this reference incorporated as if fully set forth herein.

18.    CHETAL, the purchaser of PORTER'S mining claims, paid the maintenance fees with the knowledge and permission of the BLM by writing a check postdated to September 3, 2013, which apparently arrived on September 4, 2013.

19.    See Exhibit 5 to Exhibit 1 (PORTER'S Complaint filed against CHETAL *et al*) where PAMELA J. STILES of the BLM notes that CHETAL'S check for the $276,480.00 maintenance fees was postmarked on September 3, 2013 and was not received by the BLM  until September 4, 2013.

20.    On or about September 3, 2013, CHETAL called MS. STILES, the BLM Land Law Examiner in charge of PORTER'S mining claims, and informed her that he was "having some problems with his bank" and that is why he had to postdate his check.

21.    PORTER submits that the delay in the BLM receiving and accepting CHETAL'S check on September 4, 2013 instead of September 3, 2013 is in fact the first of the "2 extensions".

22.    What happened next was that CHETAL'S check for PORTER's maintenance fees was returned for insufficient funds a day or so after BLM presented it for payment.

23.    On or about September 6, 2013 MS. STILES contacted CHETAL to inform him that his check had been dishonored by his bank, HSBC Premier.

24.    CHETAL told MS. STILES to send the check through again as it was good.

5

25.     On information and belief, nothing was said in MS. STILES' conversation with
CHETAL that his dishonored check was going to cause PORTER to lose her mining claims.

26.     BLM then presented CHETAL'S check again for payment, most probably just before
September 16, 2013, and once again CHETAL'S check was dishonored by his bank.

27.     Undoubtedly this second presentment of CHETAL'S bad check is the second of the "2
extensions" to which CHIEF NEUMAN refers in her December 31, 2013 decision.

28.     Despite these extensions, PORTER was never offered a chance to fund either of the
insufficient funds notices on CHETAL'S bad check with a good check of her own.

29.     In fact CHETAL absolutely refused PORTER'S offer to have sufficient funds placed in
his bank account so that his check to the BLM would not be dishonored a second time.

30.     Instead, when CHETAL'S second insufficient funds notice was received by the BLM
on September 16, 2013 as per Exhibit 5 to Exhibit 1 (see the handwritten note on said Exhibit 5
by MS. STILES), PORTER'S claims were forfeited retroactively to September 3, 2013 for "non-
payment".

31.     Prior to September 1, 2013, PORTER and/or her late husband DUANE H. PORTER
(hereinafter "DUANE") had paid the maintenance fees on their mining claims for 27 years at a
cost to them of some $408,240.00.

32.     They did this because by continually paying these fees their claims were "grand-
fathered in" as to any and all government regulations or statutory changes which were enacted
subsequent to the PORTERS' initial staking of these claims.

33.     This grandfathering made the Ten Sleep claims exceptionally valuable and is why they
commanded the price of $220,000,000 which CHETAL had offered.

34.     A review of paragraphs 42 through 46 of MARIAN'S Complaint against CHETAL *et al* (the attached Exhibit 1) reveals that it is appropriate to infer that CHETAL purposely defaulted on paying PORTER's maintenance fees because he thought he could go directly to the BLM and purchase these claims at a much lower price than the $220,000,000 which he contracted to pay PORTER.

35.     CHETAL did, in fact, attempt to get MS. STILES on behalf of the BLM to sell him PORTER'S mining claims shortly after causing PORTER to lose them.

36.     MS. STILES refused to agree to such a preposterous, bad faith and deceitful offer.

37.     MS. STILES then informed PORTER that PORTER would be getting an official notice sometime in March of 2014 that she had permanently and irrevocably lost all of her rights to the Ten Sleep mining claims due to non-payment of the maintenance fees due September 3, 2013.

38.     PORTER, upon her inquiry, was further informed by MS. STILES that to her knowledge no one in the entire history of the BLM'S involvement with mining rights had ever regained any mining rights lost due to non-payment or untimely payment of maintenance fees even though numerous administrative appeals and lawsuits had been pursued.

39.     Please review facts set forth in Exhibit 1 to gain a more precise understanding of just how CHETAL perpetrated his fraud on both PORTER and the BLM, both personally and by using his various corporate entities as his co-conspirators to do so.

40.     As these facts show, the BLM was as thoroughly defrauded by CHETAL as was PORTER.

41.     A review of paragraphs 24 and 25 of Exhibit 1 to MARIAN'S Complaint demonstrates that after receiving CHETAL'S financial documents described in these paragraphs by August 20, 2013, PORTER had authority from CHETAL to and did, in fact, prior to August 31, 2013, send

copies of all these documents to the BLM which documents ultimately proved to be fraudulent and pivotal in CHETAL'S deceiving PORTER into selling him her mining claims.

42.      That the BLM was deceived by CHETAL and his financial documents as thoroughly as was PORTER is confirmed by the fact that the BLM was so certain CHETAL was a bona fide purchaser of PORTER'S mining claims that the BLM gave him "2 extensions" beyond the supposedly iron-clad federal laws and regulations mandating that mining claim maintenance fees had to be paid by September 1 of each year.

43.      A further example of CHETAL'S true character which has caused PORTER'S current and devastating situation with her mining claims is that even though PORTER'S lawsuit against CHETAL and his corporate co-conspirators has been on file since December 3, 2013, CHETAL successfully evaded service by refusing to accept service of her Complaint at home or at any of his businesses from PORTER'S process servers until after, in an unguarded moment during a stake-out by her process servers on January 21, 2013, CHETAL and his co-conspiring corporations were finally served.

44.      Even though she has clearly suffered damages, PORTER expects to gain little if anything from the lawsuit against CHETAL *et al* but is pursuing it to make a clear public record of the fact that CHETAL is a dishonest, deceitful and nefarious person who will use his corporate entities as co-conspirators to further his fraudulent enterprises.

## V. FIRST CAUSE OF ACTION
### (Action for Judicial Review, Declaratory Judgment and/or Mandamus)

44.      PORTER hereby incorporates by reference all other allegations of this Complaint.

45.      The Defendants' decision holding PORTERS' mining claims to be forfeited and voice by operation of law is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

46.     The Defendants' decision incorrectly interpreted applicable statutes and regulations and incorrectly determined that such statues and regulations authorized defendants to enforce them by means of noncurable property forfeiture.

47.     The Defendants' decision holding PORTER'S mining claims to be forfeited and void by operation of law is erroneous because the agency had amandatory, ministerial duty under both statute and regulation to *accept* PORTER'S timely tender of cure, and the Defendants refuse to recognize that duty or that they, in fact, did accept the cure.

48.     The Defendants' decision holding PORTER'S mining claims to be forfeited and void by operation of law is arbitrary, capricious and erroneous because the agency erroneously applied a regulatory "substantial compliance" test in lieu of the common law doctrine of "substantial compliance" based on the definition of the word "file" although the applicable regulation here required that a maintenance fee waiver certificate by "submitted" by the deadline, not "filed."

49.     The Defendants' decision holding PORTER'S mining claims to be forfeited and void was not in accordance with PORTER'S constitutional rights including her rights under the due process clause and "excessive fines" clause of the U.S. Constitution.

50.     The Defendants' decision holding PORTER'S mining claims to be forfeited and void by operation of law was unlawful and not in accordance with law because the decision was precluded by the doctrines of estoppel, laches, and/or unclean hands.

51.     The Defendants' decision to declare PORTER'S mining claims to be forfeited and void is a part of a pattern of actions in which Defendants have unreasonable and unlawfully delayed action on PORTER'S plans to mine her mining claims.

## VI.  REQUEST FOR RELIEF

**WHEREFORE,** PORTER respectfully requests that the Court enter judgment on her behalf against the Defendants, and specifically:

(a)  Issue a preliminary injunction, stay and permanent injunction against enforcement of the defendants' decision finding and holding PORTER'S mining claims void and forfeited by operation pf law;

(b)  Expedite the decision in this case so as to minimize ongoing harm to PORTER and minimize delays for the defendants;

(c)  Find and hold and issue a declaratory judgment that the defendants' decision was arbitrary, capricious, an abuse of discretion and contrary to law, and must be reversed and invalidated, because, amount other reasons PORTER has raised:

   (i)    It was based on faulty statutory and regulatory construction, and faulty interpretations of agency authority, and ability to impose forfeiture remedies on citizens;

   (ii)   It violated the constitutional rights of PORTER including her due process rights to unambiguous notice, the right to be free from unceasing, repetitive and delaying government litigation; and her right to be free from excessive government fines;

   (iii)  The agency erred in refusing to accept PORTER's tender of cure, which it had a mandatory, ministerial duty to do under statute and regulation;

   (iv)   The decision is enforceable based on principles of laches, estoppel. And unclean hands; and

   (v)    The decision erroneously failed to properly apply the common law doctrine of substantial compliance developed over many years of litigation under the Mining Law of 1872.

(d)  Issue any appropriate mandatory and prohibitory injunctive relief, including an order compelling the defendants to accept the PORTER'S tender of cure, as they are required to

do under law, and an order requiring the defendants to cease their administrative delay and unjustified repetitive contests to PORTER'S operation and mining upon her mining claims.

(e)  To hold in contempt of court those defendants who fail to carry out the Court's orders, with all appropriate penalties and remedies.

(f)  To award PORTER her costs and attorney fees pursuant to 28 U.S.C. §§ 2412 or 2645(b)(1), or any other remedies or relief to which she may justly be entitled under the circumstances.

Dates this 18th day of April 2014.

Respectfully submitted,

CHARLES R. KOZAK, ESQ.
Charles R. Kozak, Attorney at Law, LLC
Nevada State Bar 11179
3100 Mill Street, Suite 115
Reno, Nevada  89502
(775) 322-1239
775) 800-1767 Facsimile No.
chuck@kozaklawfirm.com
Attorney for Appellant